Jeffrey A. Udell (JU0411)
OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP
Park Avenue Tower,
65 East 55th Street
New York, New York 10022
(212) 451-2300
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WHARTON CAPITAL PARTNERS LTD. and WHARTON CAPITAL MARKETS LLC, <br><br> Plaintiffs, <br><br> -against- <br><br> XSUNX, INC., <br><br> Defendant. | No. 08 Civ. <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

JUDGE STEIN
08 CV 0056

RECEIVED
JAN 03 2008
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiffs Wharton Capital Partners, Ltd. and Wharton Capital Markets, LLC, by their attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, for their Complaint, allege as follows:

### Nature of the Case

1.  In May 2006, defendant XsunX, Inc. ("XsunX"), a public company that provides solar energy solutions, was in need of capital, and it retained the services of plaintiffs Wharton Capital Partners, Ltd. and Wharton Capital Markets, LLC (collectively "Wharton") to assist it in raising financing. Pursuant to a written agreement (the "Agreement"), XsunX agreed to compensate Wharton with a fee equal to 7% of the gross transaction amount of any transaction closed between XsunX and Fusion Capital ("Fusion"), a funding source introduced by Wharton to XsunX. In November 2007, Fusion and XsunX closed a deal, pursuant to which Fusion agreed to purchase up to $21,000,000 of XsunX common stock. This transaction fell squarely

within the terms of the Agreement, thereby entitling Wharton to its 7% fee. Defendant has failed to pay the consideration now due.

## Jurisdiction and Venue

2.     This Court has subject-matter jurisdiction over this case, pursuant to 28 U.S.C. §1332(a), because the action is between the citizens of one State and a citizen of another State, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.     The Court has personal jurisdiction over defendant XsunX, as it transacts business and supplies services in New York within the meaning of Section 302 of the New York Civil Practice Law and Rules.

4.     Venue is appropriate in this District pursuant to: (i) 28 U.S.C. §1391(a), as a substantial part of the events or omissions giving rise to the claims herein occurred in this District; and (ii) 28 U.S.C. §1391(c), as XsunX "resides" in this District for purposes of venue because it is subject to personal jurisdiction here.

## The Parties

5.     Plaintiff Wharton Capital Partners Ltd. ("Wharton Ltd.") is a privately-owned corporation organized under the laws of the State of New York, with its principal place of business located at 444 Madison Avenue, in Manhattan. Wharton Ltd. is an investment banking firm that advises public and private corporations in connection with financing transactions.

6.     Plaintiff Wharton Capital Markets LLC ("Wharton LLC") is a privately-owned limited liability company organized under the laws of the State of New York, with its principal place of business also located at 444 Madison Avenue, in Manhattan. Its members are natural persons who reside in the State of New York. Wharton LLC is a FINRA-registered broker-dealer that acts as a placement agent in transactions in which Wharton Ltd. arranges financing.

7.  Defendant XsunX, Inc., upon information and belief, is a public company trading on the Nasdaq Over the Counter Bulletin Board market under the symbol "XSNX.OB." Upon information and belief, XsunX is a Delaware corporation with its principal place of business located in Aliso Viejo, California. According to its website: "XsunX is developing and commercializing new amorphous silicon thin film photovoltaic (TFPV) solar cell technologies and manufacturing processes to service expanding global energy demands." The website further claims that the company manufactures solar cell products used in large scale commercial projects, utility power fields, and other on-grid applications.

## Factual Allegations

A.  The Agreement

8.  In or before May 2006, Tom M. Djokovich, Chief Executive Officer of XsunX, commenced negotiations with Wharton personnel -- including Barry Minsky, the Chief Executive Officer of Wharton Ltd. -- regarding XsunX's prospective engagement of Wharton to locate a financing source for XsunX.

9.  During the course of those negotiations, Minsky and Djokovich exchanged drafts of an engagement letter, setting forth the proposed terms of the contemplated engagement between their respective firms.

10. The parties ultimately agreed on all material terms of the engagement.

11. On May 9, 2006, via facsimile, Djokovich sent Minsky a contract -- executed by Djokovich on behalf of XsunX -- containing all of the material terms of the parties' agreement. Specifically, under those terms:

   (a)  Wharton agreed to act as the non-exclusive financial consultant and/or placement agent of XsunX for a 30-day period, for the purpose of introducing Fusion to XsunX

in connection with Fusion's financing or purchase of $20 million or more of XsunX public offerings, such as common stock.

(b)    As compensation for Wharton's services, XsunX agreed to pay Wharton a fee, at the closing of a transaction between Fusion and XsunX, equal to the sum of 3% of the gross transaction amount in cash plus 4% of the gross transaction amount in XsunX common stock, which may be registered or contain rights to be registered in XsunX's next registration statement (for a total fee of 7% of the gross transaction amount).

(c)    Wharton would be entitled to its fee in the event that XsunX closed a transaction with Fusion at any time within three years after execution of the agreement between XsunX and Wharton.

12.    On May 11, 2006, Minsky spoke with Djokovich via telephone and the two men orally agreed to remove a non-material indemnification clause from the Agreement. As agreed, Minsky then struck the indemnification clause, and signed the Agreement (attached hereto as Exhibit A).

13.    Thereafter, Wharton and XsunX proceeded with the engagement set forth in the Agreement.

14.    Wharton fully performed under the terms of the Agreement. Specifically, after meeting with XsunX and analyzing the company's needs, Wharton tailored a financing solution to meet those needs. It was Wharton who came up with the idea that XsunX should pursue a credit line as a means of raising capital. It was Wharton who brought its expertise to bear in selecting the *right* investors who would match the needs of XsunX. Pursuant to the Agreement, Wharton introduced XsunX to Fusion for the purposes of securing a financing commitment.

15. Although a proposed term sheet between Fusion and XsunX was circulated by Fusion on or about May 22, 2006, contemplating a $25 million credit facility, this term sheet was not executed at that time.

B. XsunX Seeks to Renegotiate the Agreement

16. In or about October 2007, Djokovich contacted Minsky via telephone to inform him that Fusion and XsunX had agreed to the terms of a $21 million credit facility, pursuant to which Fusion would be obligated to purchase up to $21 million of XsunX common stock under certain terms and conditions. In this phone conversation, Djokovich acknowledged the existence of the Agreement between XsunX and Wharton. However, Djokovich argued that Wharton should consent to be compensated at some amount substantially *less* than the 7% provided for in the Agreement.

17. Thereafter, XsunX and Wharton engaged in negotiations regarding the amount of compensation that Wharton would receive, under a contemplated amendment to the Agreement.

18. On October 30, 2007, Djokovich sent Minsky an email message in which he wrote, in relevant part: "I have attached a letter providing for the compensation of Wharton under the proposed Fusion deal [with XsunX]." That attached letter, on XsunX letterhead and addressed to Wharton Ltd., read, in relevant part, as follows:

> This letter hereby amends and supersedes that certain letter agreement dated May 9, 2006 ("May 9 Letter"), between XSUNX, Inc. ("XSUNX"), Wharton Capital Partners Ltd. and Wharton Capital Markets, LLC (Wharton Capital Partners and Wharton Capital Markets collectively, "Wharton"). All capitalized terms used in this letter that are not defined in this letter shall have the meanings set forth in the May 9 Letter.
>
> The parties agree as follows:
>
> Upon XSNX and Fusion entering into a common stock purchase agreement for the purchase of $21 million of XSNX common stock, XSNX agrees to issue 750,000 shares of XSNX common

5

562589-4

> stock (the "Shares") to Wharton as full and complete payment to Wharton with respect to any transaction between Fusion and XSNX. . . . .
>
> The parties each represent and agree that there are no agreements, arrangements or understandings of any kind between them, other than this letter and the May 9 Letter, with respect to a transaction that involves Fusion.

19. The terms of the foregoing letter were never signed or agreed to by Wharton.

C. XsunX Denies the Existence of the Agreement

20. On October 31, 2007, Minsky sent Djokovich a counter-proposal to Djokovich's October 30, 2007 proposed amendment to the Agreement.

21. On November 5, 2007, XsunX publicly announced that it had secured a total of $21 million in financing from Fusion via a signed definitive stock purchase agreement.

22. On November 7, 2007 -- having received from Djokovich neither an acceptance nor a rejection of Minsky's October 31, 2007 counter-proposal -- Minsky informed Djokovich in writing that he was withdrawing his October 31, 2007 counter-proposal and that, consequently, Wharton would insist upon payment of its fee in accordance with the terms of the Agreement.

23. Thereafter, Wharton received notification from counsel to XsunX that, in the view of XsunX, there is no enforceable agreement between Wharton and XsunX.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

24. Plaintiffs restate the allegations set forth in paragraphs 1 to 23.

25. As set forth above, from on or about May 9, 2006, Djokovich and Minsky executed the Agreement between XsunX and Wharton, respectively, containing all material terms. In addition, by emailed letter dated October 30, 2007, XsunX re-affirmed the existence of the Agreement.

26. Wharton has complied in all material respects with the terms of the Agreement.

27. XsunX has breached the Agreement by refusing to compensate Wharton, as provided therein.

28. By reason of the foregoing, Wharton has been damaged in an amount to be determined at trial, no less than $2,000,000.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

29. Plaintiffs restate the allegations set forth in paragraphs 1 to 23.

30. As set forth above, the Agreement set forth all of its material terms, and was signed by Djokovich, on behalf of XsunX. In addition, by emailed letter dated October 30, 2007, XsunX re-affirmed the existence of the Agreement.

31. Wharton has fully performed under the terms of the Agreement.

32. Accordingly, plaintiffs seek a judgment from this Court, declaring that the Agreement is a valid and enforceable agreement, and that XsunX is obligated to compensate Wharton under the terms of the Agreement.

## THIRD CLAIM FOR RELIEF
### (Specific Performance)

33. Plaintiffs restate the allegations set forth in paragraphs 1 to 23.

34. As set forth above, Wharton has complied in all material respects with the terms of the Agreement and XsunX has breached the Agreement by refusing to compensate Wharton, as provided therein.

35. Pursuant to the Agreement, XsunX agreed to pay Wharton "at closing 4% of the gross transaction amount" of the transaction between XsunX and Fusion "in XSNX common stock, which subject to the terms of the funding transaction, may be fully registered or contain piggyback registration rights to be registered in XSNX's next registration statement."

36. XsunX has breached the Agreement by refusing to compensate Wharton, as provided therein.

37. Accordingly, plaintiffs request judgment of specific performance against defendant XsunX, and the immediate transfer to plaintiffs of the XsunX common stock contemplated in the Agreement.

## FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

38. Plaintiffs restate the allegations set forth in paragraphs 1 to 23.

39. Wharton has provided tangible services to XsunX, as set forth above, by, *inter alia*, providing it with a successful source of financing.

40. XsunX has failed and refused to compensate Wharton for the full value of these services, although payment has been duly demanded.

41. By reason of the foregoing, Defendant XsunX is liable to Wharton in an amount to be determined at trial, no less than $2,000,000.

WHEREFORE, plaintiffs respectfully request that the Court enter judgment as follows:

- A) Awarding plaintiffs compensatory damages or, alternatively, equitable damages, in an amount to be determined at trial, no less than $2,000,000, plus interest thereon;

- B) Awarding plaintiffs specific performance of the terms of the Agreement;

- C) Declaring the Agreement to be a valid and enforceable agreement between Wharton and XsunX, and declaring that XsunX is obligated to compensate Wharton under the terms of the Agreement.; and

- D) Granting such other and further relief that the Court deems just and proper, together with the costs and disbursements of this action.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: New, York, New York
January 3, 2008

                                  OLSHAN GRUNDMAN FROME
                                  ROSENZWEIG & WOLOSKY LLP

               By: _____
                    Jeffrey A. Udell (JU0411)
                    *Attorneys for Plaintiffs*
                    Park Avenue Tower
                    65 East 55th Street
                    New York, New York 10022
                    (212) 451-2300

562589-4

# Exhibit A

# XSUNX Inc.
### 65 Enterprise – Aliso Viejo, CA 92656

May 9, 2006

Wharton Capital Partners, Ltd.
545 Madison Avenue
New York, NY 10022

Gentlemen:

This letter is to confirm that Wharton Capital Partners Ltd. and Wharton Capital Markets, LLC (Wharton) are authorized to act as non exclusive financial consultant and/or placement agent for XSUNX Inc. (XSNX) through June 8, 2006 for the purpose of introducing Fusion Capital, their affiliates and associates (Fusion) to XSNX in connection with the financing or purchase of up to $20 million or more of various types of offerings including common stock of XSNX under Regulation D of the Securities Act of 1933 as amended, and under terms mutually acceptable to the parties.

At the closing of a transaction between XSNX and Fusion, XSNX agrees to pay to Wharton or its designee a fee equal to 3% of the gross transaction amount for such tranche, (of which Wharton Capital Markets, LLC shall receive 1% as a placement agent fee) which fee may be deducted from the proceeds at closing and/or paid directly by the escrow agent. In addition, XSNX agrees to pay Wharton or its' designee at closing 4% of the gross transaction amount for such tranche in XSNX common stock, which subject to the terms of the funding transaction, may be fully registered or contain piggyback registration rights to be registered in XSNX's next registration statement. The fees set forth above are due and payable to Wharton only in the event of a closing with Fusion irrespective of whether a transaction closes during the term hereof or within the three-year term of confidentiality of this engagement letter.

XSNX acknowledges that the relationships between Wharton and the persons and/or entities to be introduced to XSNX for the purposes contemplated by this agreement are proprietary to Wharton and essential to its business. Accordingly, XSNX agrees to keep the names of investors confidential, except for SEC reporting purposes or if legally required, and for a three-year period following the execution of this agreement, that neither XSNX, nor any of its officers directors or other representatives, will utilize, either directly or indirectly, any sources introduced to XSNX by Wharton hereunder for the purpose of arranging or entering into any future financing for XSNX or any of its affiliates, without the express written consent of Wharton and without satisfactory compensation to Wharton. XSNX also agrees not to issue any press releases relating to this transaction without the prior review of Wharton and without mentioning that Wharton facilitated the transaction, unless prohibited by applicable law.



XSNX represents it is free, subject to consent and the right of first refusal contained within a current XSNX third party financing, to enter into this transaction, will act in good faith and will not hinder Wharton's efforts hereunder. Wharton agrees, in contemplation of the relationship and services set forth above, to indemnify XSNX for any losses incurred by XSNX in connection with losses which result from the gross negligence or bad faith of Wharton performing the services that are subject of this engagement letter.

Very truly yours,

| XSUNX Inc. | Wharton Capital Partners, Ltd. |
|---|---|
| _____ CEO | _____ CEO |
| Authorized Signature | Authorized Signature |
| Tom M. Djokovich as CEO | Barry Minsky as CEO |
| Name and Title | Name and Title |
| 5/9/06 | 5/11/06 |
| Date | Date |